IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VALERIE ANN WHEELER,              : Civil No. 1:24-CV-894
                                  :
    Plaintiff,                    :
                                  :
    v.                            :
                                  : (Chief Magistrate Judge Bloom)
LELAND DUDEK, Acting              :
Commissioner of Social Security,[1] :
                                  :
    Defendant.                    :

## MEMORANDUM OPINION

## I.   Introduction

Valerie Wheeler filed an application for social security income on November 25, 2020. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Wheeler was not disabled from her alleged onset date of November 1, 2020, through the date of the ALJ's decision, May 18, 2023.

Wheeler now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record,

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Valerie Wheeler filed for supplemental security income, alleging disability due intellectual and learning disabilities and comprehension difficulties. (Tr. 90). She alleged an onset date of disability of November 1, 2020. (*Id.*). Wheeler was 23 years old at the time of her alleged onset of disability, had a limited education, and had no past relevant work. (Tr. 40).

The medical record regarding Wheeler's impairments is limited, consisting of her high school individualized education plans ("IEPs"), a consultative examination, a court-ordered psychiatric evaluation, and the disability determinations at the initial and reconsideration levels. Wheeler's IEP from February of 2014 to February of 2015 indicated that

Wheeler attended Old Forge High School and joined her math and English classes in a learning support setting. (Tr. 309, 314, 370, 403). She also participated in cosmetology classes for half of the school week. (Tr. 312-13, 414-15). Wheeler's teachers in both her general and learning support classes indicated that she was focused and organized during class, and that she worked well with small groups on a daily basis. (Tr. 319). It was also noted that Wheeler had a respectful demeanor, could work independently, completed her class work, and exhibited consistent work efforts. (Tr. 415). Additionally, a representative from Wheeler's cosmetology program indicated that she was doing well and did not need to utilize modified testing. (Tr. 320). This representative also noted that Wheeler was interested in pursuing working with animals. (Tr. 320, 423). Ultimately, the IEP indicated that Wheeler continued to meet the criteria for intellectual disability, with her overall cognitive ability falling in the extremely low range, and a specific deficit in her working memory. (Tr. 321, 424). Wheeler only completed the 10th grade, as she became pregnant in the 11th grade and dropped out of school. (Tr. 73).

Wheeler underwent a mental status and intelligence evaluation with Dr. Jennifer Betts, Psy.D., in March of 2021. (Tr. 441-50). Wheeler reported living with her two children, her father, and her grandmother, and she was working on getting her GED. (Tr. 441). She further indicated she had past employment as a cashier in 2018 before leaving due to pregnancy and comprehension difficulties. (*Id.*). Wheeler did not submit any medical records to Dr. Betts but submitted a third-party evaluation completed by her friend, Mercedes Harding. (*Id.*).

As to her ability to function, Wheeler reported experiencing some cognitive deficits, and that she was involved in learning support classes in school. (Tr. 443). She indicated she had difficulties with concentration and her short term memory. (*Id.*). Dr. Betts recorded that Wheeler did not meet the criteria for depressive or anxiety disorder. (Tr. 442). Wheeler further reported an incident in 2018, which led to Children and Youth Services temporarily removing one of her children from her custody. (Tr. 443). Dr. Betts noted that Wheeler was able to perform personal care and household chores independently, and that she enjoyed

spending time with her children, playing video games, and engaging in social media. (Tr. 446).

Dr. Betts' mental status examination revealed a cooperative and friendly demeanor, and Dr. Betts noted that Wheeler "generally presented as higher functioning than her assessment would suggest." (Tr. 443). Wheeler exhibited fluent and clear speech, a full and appropriate affect, a bright and euthymic mood, intact attention and concentration, impaired recent and remote memory, borderline cognitive functioning, and fair to poor insight and judgment. (Tr. 443-44). Dr. Betts also administered the Wechsler Adult Intelligence test, during which Wheeler demonstrated a composite score of 81 for Verbal Comprehension Index, 71 for Perceptual Reasoning Index, 69 for Working Memory Index, and 86 for Processing Speed Index, resulting in a full scale IQ score of 72. (Tr. 445-46). Dr. Betts noted this to be in the borderline range. (Tr. 445).

Dr. Betts filled out a medical source statement regarding Wheeler's abilities to perform work-related activities. (Tr. 451-53). Dr. Betts recorded mild to moderate limitations in Wheeler's ability to understand,

remember, and carry out instructions due to her borderline IQ and deficits in perceptual reasoning and working memory; moderate limitations in interacting with supervisors; marked limitations in appropriately responding to usual work situations and changes in a routine work setting; and unspecified limitations in adapting and self-management, noting that Wheeler had "limitations in self [management] due to cognitive deficits." (Tr. 451-52).

In January of 2022, Wheeler underwent a psychiatric assessment at Scranton Counseling Center for a "court ordered psych eval[.]" (Tr. 458, 462). Wheeler reported that she lived with her two sons and her boyfriend was in rehab. (*Id.*). She further reported a history of stress, anxiety, and trouble concentrating. (Tr. 461).

It was against the backdrop of this record that an ALJ held a hearing on Wheeler's disability application on February 1, 2023. (Tr. 66-88). Wheeler and a Vocational Expert both appeared and testified at the hearing. (*Id.*). On May 18, 2023, the ALJ issued a decision denying Wheeler's application for benefits. (Tr. 25-46). The ALJ first concluded that Wheeler had not engaged in substantial gainful activity since

November 1, 2020, her alleged onset of disability. (Tr. 31). At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Wheeler suffered from the following severe impairments: specific learning disorders, provisional; other specified neurodevelopmental disorder (borderline intellectual functioning with deficits in perceptual reasoning and working memory); and speech or language impairment. (*Id.*).

At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 31-36). Specifically, the ALJ found that Wheeler was only moderately limited in the four areas of social functioning. (Tr. 31-34). The ALJ further concluded that Wheeler did not meet all the requirements for Listing 12.05B. (Tr. 35-36). Specifically, the ALJ found that Wheeler's test scores did not reach listing level severity, and further, that Wheeler only suffered moderate, as opposed to marked or extreme, limitations in the four areas of social functioning. (*Id.*).

Between Steps 3 and 4, the ALJ then concluded that Wheeler:

[H]a[d] had the residual functional capacity to perform a full range of work at all exertional levels but with the following

7

> nonexertional limitations: The claimant is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks involving only 1-2 steps, in a work environment with no fast-paced production requirements, only simple work-related decisions, and only occasional workplace changes. The claimant is limited to occasional interaction with supervisors, coworkers, and the public.

(Tr. 36).

In reaching this RFC determination, the ALJ considered the objective record detailed above, the medical opinion evidence, and Wheeler's reported symptoms. With respect to the medical opinion evidence, the ALJ considered the opinions of the state agency psychological consultants, Dr. Cloutier and Dr. Mrykalo, and found these opinions significantly persuasive. (Tr. 39). These providers opined that Wheeler had no more than moderate limitations in the areas of social functioning, and that Wheeler could perform one-to-two-step tasks on a consistent basis. (Tr. 94-100, 111-17). The ALJ reasoned that these opinions were supported by and consistent with the objective record, which showed only moderate impairments in Wheeler's ability to function. (Tr. 39).

The ALJ also considered the opinion of the examining consultant, Dr. Betts, and found this opinion only somewhat persuasive. (Tr. 39-40). The ALJ noted Dr. Betts' lack of a limitation regarding Wheeler's interaction with the public, which he found to be inconsistent with Wheeler's testimony that evidenced a moderate limitation in this area. (Tr. 39). The ALJ also found that Dr. Betts' marked limitation in responding to usual work situations and changes in a routine work setting was not supported by her own examination findings, which showed only a moderate limitation in this area. (Tr. 39-40).

With respect to Wheeler's symptoms, the ALJ found that Wheeler's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence. (Tr. 37-39). Wheeler testified that she needed assistance going to the store because she did not drive or have a license. (Tr. 78). She reported that she got anxious in public places or around large groups of people. (Tr. 78-79). Wheeler stated that she had a friend who helped her find and fill out job applications or documents when she needed, as she had difficulty signing documents. (Tr. 74, 80). Regarding her home life,

Wheeler testified that she lived with her two children, two cousins, and her grandmother. (Tr. 74). She reported that it was "pretty easy taking care of the kids[,]" and that she was able to prepare simple meals but could not follow a recipe because it would be confusing for her. (Tr. 76, 82). She further testified regarding the incident with Children and Youth Services, reporting that she ultimately passed a test and regained custody of her son. (Tr. 76-77).

The ALJ found Wheeler's statements concerning the disabling level of her symptoms to be inconsistent with the objective clinical findings. (Tr. 37-39). The ALJ noted that much of the record, including the high school IEPs, was prior to Wheeler's alleged onset date. (Tr. 37). The ALJ further noted that her IEPs indicated that Wheeler needed some assistance but that she was generally focused and organized, and that she did well in her cosmetology course with modified testing. (Tr. 38). The ALJ also discussed that Wheeler's records contained minimal treatment during the relevant time. (*Id.*). The ALJ noted Dr. Betts' consultative examination, as well as the January 2022 court-ordered psychiatric evaluation. (*Id.*). Ultimately, the ALJ found that the record,

Wheeler's testimony and activities of daily living, and the lack of treatment supported only moderate limitations as outlined in the RFC determination. (Tr. 39).

Having made these findings, the ALJ found at Step 4 that Wheeler had no relevant past work but found at Step 5 that Wheeler could perform the occupations of a cleaner (housekeeping), inspector and hand packager, and cleaner II. (Tr. 41). Accordingly, the ALJ found that Wheeler had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 41-42).

This appeal followed. On appeal, Wheeler argues that the ALJ erred in finding that she did not meet Listing 12.05B, erred in his consideration of Dr. Betts' opinion, and did not include all of Wheeler's relevant limitations in the hypotheticals to the vocational expert. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.  Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL

13

940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather

14

the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

15

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments,

16

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

17

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

18

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Standards Governing Step 3 of the Sequential Analysis

At Step 3 of this sequential analysis, the ALJ is required to determine whether a claimant's impairments or combination of impairments are so severe that they are *per se* disabling, entitling the claimant to benefits. As part of this analysis, the ALJ must determine whether a claimant's alleged impairment is equivalent to one or more listed impairments, commonly referred to as listings, that are acknowledged to be so severe as to preclude the claimant from working. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; *Burnett*, 220 F.3d 112, 119.

Thus, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered *per se* disabled and is awarded benefits. 20 C.F.R. §416.920(d); *Burnett*, 220 F.3d at 119. The claimant bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91). An impairment that meets or equals only some of the criteria for a listed impairment will not be sufficient. *Id.*

This Step 3 determination is a medical determination. Accordingly, the claimant must present medical evidence or a medical opinion showing that his or her impairment meets or equals a listing. However, the ALJ is not required to accept a physician's opinion if the opinion is not supported by objective medical evidence. *See Schwartz v. Halter*, 134 F. Supp. 2d 640, 659 (E.D. Pa. 2001). The ALJ is responsible for identifying the relevant listed impairments, given that it is it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Burnett*, 220 F.3d at 120 n.2.

20

## D. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in November of 2020 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§

21

404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a

medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### E. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supports the ALJ's decision in this case.

The plaintiff first challenges the ALJ's finding that she did not meet Listing 12.05B. This listing contains three requirements that must be established for the plaintiff to be considered *per se* disabled:

> 1. Significantly subaverage intellectual functioning evidence by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>> b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually

administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

> a. Understand, remember, or apply information (see 1    2.00E1); or
> b. Interact with others (see 12.00E2); or
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
> d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The plaintiff asserts that the ALJ erred in finding that her test scores did not meet listing-level severity because he failed to consider her working memory index comparable part score of 69, which she contends meets 12.05B(1)(b).  (Doc. 12 at 5-6).  However, even if the comparable part score of 69 meets the first requirement of 12.05B, the ALJ found that Wheeler did not meet the second requirement, as she only had moderate limitations in the four areas of mental functioning.  Accordingly, the ALJ

did not err in finding that Wheeler was not *per se* disabled under Listing 12.05B.

In a similar vein, we conclude that the ALJ's consideration of Dr. Betts' opinion was supported by substantial evidence. The plaintiff appears to rely on Dr. Betts' evaluation to argue that she had more than moderate limitations in the paragraph B criteria, which would have satisfied the second requirement of Listing 12.05B. (Doc. 12 at 6, 8). At the outset, we note that Dr Betts' medical source statement contained only one marked limitation in the area of responding appropriately to usual work situations and changes in a routine work setting. (*See* Tr. 451-52). Additionally, the plaintiff points to Dr. Betts' opinion that Wheeler experienced limitations in self-management. However, Dr. Betts' opinion does not quantify the severity of this restriction. (*See* Tr. 452). Accordingly, the plaintiff's reliance on Dr. Betts' opinion to suggest she meets the requirements for Listing 12.05B is unavailing, as this

opinion, on its face, does not demonstrate that Wheeler suffers from two marked or one extreme limitation in any area of mental functioning.

We reach a similar conclusion with respect to Wheeler's allegation that the ALJ erred in his consideration of Dr. Betts' opinion generally. The plaintiff points to the same marked limitation found by Dr. Betts and argues that, had the ALJ found this limitation persuasive, it would have resulted in a finding that Wheeler was disabled. (Doc. 12 at 8). She asserts that the ALJ failed to consider the supportability and consistency of this opinion with the other evidence, and that this opinion should have been given more persuasive value due to Dr. Betts' qualifications.

Here, the ALJ discussed Dr. Betts' opinion, and specifically her finding of a marked limitation in responding appropriately to usual work situations and changes in a routine work setting. The ALJ reasoned that this limitation was not supported by Dr. Betts' own examination findings, which included intact attention and concentration, presenting as cooperative and friendly, and having an adequate manner of relating, social skills, and overall presentation. (Tr. 39-40). While the plaintiff asserts that the ALJ failed to consider Dr. Betts' supporting explanation

26

for the marked limitation, *i.e.*, her diagnoses on the first page of the medical source statement, "[t]he ALJ need not 'use particular language or adhere to a particular format in conducting his analysis.' The only requirement is that, reading the ALJ's decision as a whole, there must be 'sufficient development of the record and explanation of findings....'" *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Here, the ALJ considered Dr. Betts' opinion in conjunction with the other medical and nonmedical evidence, including the state agency providers' findings, Wheeler's IEPs from prior to the onset of disability, and the third-party statement of Wheeler's friend, and concluded that this opinion was only somewhat persuasive. The ALJ adequately explained his reasoning, pointing to Dr. Betts' own examination findings and other relevant evidence of record that did not support and was not consistent with Dr. Betts' limitations. Accordingly, we conclude that

substantial evidence supported the ALJ's consideration of Dr. Betts' opinion.

Finally, Wheeler contends that the ALJ did not include all of her credibly established limitations in his hypotheticals to the vocational expert. (Doc. 12 at 12-13). However, the limitations the plaintiff points to are limitations set forth by Dr. Betts' opinion that the ALJ did not find persuasive. It is well established that while the ALJ "must include all 'credibly established limitations' in the hypothetical [submitted to the vocational expert,]" the Third Circuit does not require that "every impairment alleged by a claimant[,]" be submitted, rather "the ALJ is only required to submit credibly established limitations." *Zirnsak*, 777 F.3d 615 (citations and quotation marks omitted). Here, the ALJ explained why he discounted the marked limitation contained in Dr. Betts' medical opinion, and accordingly, was not required to submit that limitation to the vocational expert for consideration. Therefore, we find no error in the ALJ's hypothetical questions to the vocation expert.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that

substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.  Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 24th day of March 2025.

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge